

COPY

UNITED STATES DISTRICT COURT

FOR THE

MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,             )
                                      )  3:CV 02-1362
                          Plaintiff   )
                                      )     CIVIL NO.
                       v.             )
                                      )          FILED
VICTORIA J. WEISS                     )      HARRISBURG, PA
                                      )
                          Defendant   )       AUG 07 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## COMPLAINT

The United States of America, a sovereign corporation by Thomas A. Marino, United States Attorney in and for the Middle District of Pennsylvania, for its Complaint alleges:

1. That this Court has jurisdiction under the provisions of 28 U.S.C. 1345.

2. That the defendant, Victoria J. Weiss resides at 69 Blue Pond Road, Newville, Pennsylvania 17241.

3. That on or about December 23, 1993, at the special instance and request of Victoria J. Weiss, the United States of America, acting through the Under Secretary of Rural Development, on behalf of Rural Housing Service, United States Department of Agriculture, (hereinafter Plaintiff), lent to said defendant the sum of $90,000.00 pursuant to the provisions of Title V of the Housing Act of 1949, as amended, (42 U.S.C. 1471, et seq).

4. That as evidence of the indebtedness, the defendant executed and delivered to the Plaintiff, her Promissory Note dated December 23, 1993, in the amount of $90,000.00. A true copy of the Note is attached hereto, marked Exhibit A, and made a part hereof as if set forth in its entirety at this point.

5. That the Promissory Note dated December 23, 1993 was reamortized on March 23, 1997, in the amount of $97,854.71. A true copy of the Reamortization Agreement is attached hereto, marked Exhibit B, and made a part thereof as if set forth in its entirety at this point.

6. That during the course of her loan, the defendant's monthly mortgage payments were subsidized by the Plaintiff. Pursuant to 42 U.S.C. 1490(a) and the Real Estate Mortgage, any subsidy received by the Defendant on loans received after October 1, 1979, is subject to recapture upon disposition of the property. The amount of the subsidy that may be due is set forth in the due and owing paragraph of this Complaint.

7. That the defendant, for the purpose of securing the Plaintiff against loss, did execute and acknowledge to the Plaintiff, on or about December 23, 1993, a Real Estate Mortgage whereby she granted, conveyed, and mortgaged the real property described therein to the Plaintiff. A copy of the Real Estate Mortgage is attached hereto, marked Exhibit C, and made a part hereof as if set forth in its entirety at this point.

8. That the Real Estate Mortgage was duly recorded on December 23, 1993, with the Office of the Recorder of Deeds, Cumberland County, Pennsylvania, in Book 1187, Page 790.

9. That the Plaintiff is the owner and holder of the Promissory Note and Real Estate Mortgage.

10. That the Promissory Note provides, among other things, as follows:

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

11. That the defendant has failed or refused to comply with the provisions of the Promissory Note and Real Estate Mortgage, as follows: (a) she has failed or refused to pay the installments of principal and interest when due; and (b) she has failed or refused to pay real estate taxes when due.

12. That because of the breaches of the provisions and conditions of the Promissory Note and Real Estate Mortgage, the Plaintiff paid $4,703.60 on the mortgaged premises and charged the sum to the account of the defendant.

13. That because of the breaches of the provisions and conditions of the Promissory Note and Real Estate Mortgage, the Plaintiff does hereby elect to declare the entire amount of the indebtedness of the Promissory Note and Real Estate Mortgage to be immediately due and payable.

14. That there is now fully due and owing the Plaintiff on the Promissory Note and Real Estate Mortgage the following sums:

(a) Principal and advances.................................................................$102,132.63

(b) Interest through April 1, 2001    ..............................................$ 21,930.87

(c) Interest Credit Subject to Recapture............................................ $ 13,483.00

TOTAL.......................................................... $137,546.50

Plus interest accruing from April 1, 2001, at the daily rate of $18.127.

15. That the defendant is the current record owner of the mortgaged premises to the best of the Plaintiff's knowledge and belief.

16. In order to provide notice of Plaintiff's intention to foreclose, Plaintiff sent to defendant a Notice of Intention to Foreclose under date of May 13, 1998, by certified mail, to her address, being the Post Office address of the mortgaged property; a photocopy of the carbon copy of the Notice, is attached hereon, made a part hereof and marked Exhibit D.

17. That no other action has been brought at law or in equity to enforce the provisions of the aforesaid Promissory Note and Real Estate Mortgage, and that all conditions precedent to the bringing of the action have been performed or have occurred. The Plaintiff has complied with the requirements of 7 C.F.R. 3550.207.

WHEREFORE, the Plaintiff demands judgment as follows:

(a) That the defendant and every person whose conveyance or encumbrance is subsequent or subsequently recorded, be forever barred and foreclosed of all rights, claim, lien, and equity of redemption in the mortgaged premises;

(b) That said premises may be decreed to be sold according to law;

(c) That the amount due to the Plaintiff on its Promissory Note and Real Estate Mortgage may be adjudged;

(d) That the monies arising from said sale be brought into Court;

(e) That the Plaintiff be paid the amount adjudged due the Plaintiff with interest thereon to the time of such payment, together with costs and expenses of this action and expenses of said sale so far as the amount of such money applicable thereto will pay the same;

(f) That the Plaintiff shall have such other and further relief, or both, in the premises as shall be just and equitable.

DATED: _August 6, 2002_


UNITED STATES OF AMERICA
THOMAS A. MARINO
UNITED STATES ATTORNEY
MIDDLE DISTRICT OF PENNSYLVANIA


By _Martn C.Carln_
MARTIN C. CARLSON
Assistant United States Attorney

USDA-FmHA
Form FmHA 1940-16
(Rev. 4-91)

**PROMISSORY NOTE**

| TYPE OF LOAN |
|---|
| RURAL HOUSING |

| STATE |
|---|
| PENNSYLVANIA |
| COUNTY |
| CUMBERLAND |
| CASE NO. |
| 44-21-207423695 |

Date ___DECEMBER  23,_____, 19 _93_.

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration,

United States Department of Agriculture, (herein called the "Government") at its office in _____

___43 BROOKWOOD AVENUE, SUITE 1, CARLISLE PA 17013-9126_____,

THE PRINCIPAL SUM OF ___NINETY THOUSAND DOLLARS AND 00/100----------------------------

DOLLARS ($___90,000.00-------------------------------), plus INTEREST on the UNPAID PRINCIPAL of

_SIX AND ONE HALF---------_ PERCENT ( __6.50----%) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I.    Principal and Interest payments shall be deferred. The interest accrued to _____, 19_____

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of

such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.   Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each _____ beginning on _____ , 19____, through _____, 19____,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☒ III.  Payments shall not be deferred. Principal and Interest shall be paid in ___396_____ installments as indicated in the box below:

---

$__553.00_____ on ___JANUARY 23,_____, 19 _94_, and

$__553.00_____ thereafter on the __23rd_____ of each __MONTH_____

until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness

evidenced hereby, if not sooner paid, shall be due and **PAYABLE** _THIRTY THREE----(---33-----------) **YEARS** from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

SUBSIDY REPAYMENT AGREEMENT: Borrower agrees to the repayment (recapture) of subsidy granted in the form of interest credits. Subsidy will be repaid when the borrower's account is settled by sale of the security property, refinancing or payment in full and will be calculated in accordance with regulations in effect at the time of settlement. Recapture is based on property appreciation and can equal all, some or none but never exceed the amount of subsidy received.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are hereby waived.

_Victoria J. Weiss_                        (SEAL)
VICTORIA J. WEISS        (BORROWER)
UNMARRIED                                  (SEAL)
                        (CO-BORROWER)

69 BLUE POND ROAD

NEWVILLE PA 17241

| | RECORD OF ADVANCES | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 90,000. | 12-13-93 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 90,000.00 | |

A Reamortization and/or Deferral Agreement dated March 23, 1997 in the principal
sum of $97,854.71, has been given to modify the payment schedule of this note.

USDA-FmHA
Form FmHA 452-2
(4-17-78)

## REAMORTIZATION and/or DEFERRAL AGREEMENT

| **BORROWER CASE NUMBER** | | | **FUND CODE** | **LOAN NUMBER** | **EFFECTIVE DATE OF REAMORTIZATION** | | |
|---|---|---|---|---|---|---|---|
| St. | Co. | Borrower ID | | | Month | Day | Year |
| 44 | 21 | 207423695 | 46 | 01 | 03 | 23 | 97 |

The United States of America, acting through the Farmers Home Administration, United States Department of Agriculture (called the "Government"), is the owner and holder of a promissory note or assumption agreement (new terms) in the principal sum of NINETY THOUSAND 00/100---------------------- Dollars ($ 90,000.00------),

plus interest on the unpaid principal of SIX AND ONE HALF percent ( 6.5 %) per year, which was made or assumed by

VICTORIA J. WEISS _____ and _____

(called "I/We"), dated _____ DECEMBER 23 , 19 93 , and payable to the order of the Government. The

unpaid principal balance (including advances) is $ 92,020.32 _____ . The accrued interest to date is

$ 5,834.39 _____ . The total debt to date is $ 97,854.71 _____ , which now is principal.

Because one or more of the conditions set forth in Farmers Home Administration regulations have been met for obtaining a reamortization or deferral of the debt, the Government agrees to grant this reamortization or deferral of said loan and I/we agree to make payments using one of two alternatives as indicated below:  (check one)

**☒ A.  Reamortization**

(1) The first installment in the amount of $ 621.00----------------; will be due and payable on

_____ APRIL 23 , 19 97 .

(2) Thereafter, regular installments, each in the amount of $ 621.00 _____ , will be due and

payable on the TWENTY THIRD _____ of each MONTH _____ until the principal and interest are paid, except that the final installment of the entire debt, if not paid sooner, will be due and payable on

_____ DECEMBER 23 , 2026 .

**☐ B.  Deferral and Reamortization**

Installments shall be deferred as indicated in the table below. All unpaid interest accrued to _____ .

19 ___, shall be added to the principal. The new installment schedule will be as follows:

$ _____ on _____ , 19 ___

$ _____ on _____ , 19 ___

$ _____ on _____ , 19 ___

$ _____ on _____ , 19 ___

$ _____ on _____ , 19 ___

$ _____ on _____ , 19 ___

and $ _____ thereafter on the 1st of January of each year until the principal and interest are paid, except that the final installment of the entire debt, if not paid sooner, will be due and payable on

_____ , _____ .

Position 2                    Form FmHA 452-2 (4-17-78)

Nothing in this agreement affects any of the terms or conditions of the note or assumption agreement, or the instruments securing it, other than the payment schedule (which includes the due date of the final installment).

Upon default in the payment of any one of the above installments or in case of a failure to comply with any of the conditions and agreements contained in the above-described note or assumption agreement or the instruments securing it, the Government at its option may declare the entire debt immediately due and payable and may take any other action authorized therein.

x _Victoria J. Weiss_ _____ (Borrower)
VICTORIA J. WEISS

_____ (Date)                        _____ (Borrower)

UNITED STATES OF AMERICA
FARMERS HOME ADMINISTRATION

By _____
   CHESTER POGORZELSKI

Title _Community Development Manager_

Date _3/31/97_

*42934 - TUT*

USDA-FmHA
Form FmHA 1927-1 PA
(Rev. 8-92)

Position 5

## REAL ESTATE MORTGAGE FOR PENNSYLVANIA

THIS MORTGAGE is made and entered into by _____ VICTORIA J. WEISS _____

residing in _____ Cumberland _____ County, Pennsylvania, whose post office address is

69 Blue Pond Road, Newville, _____ , Pennsylvania _____ 17241 _____ ,

herein called "Borrower," and The United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, the Mortgagee, whose principal office is located in Washington, D.C., herein called the "Government," and:

WHEREAS Borrower is indebted to the Government, as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 12-23-93 | $90,000.00 | 6.50% | 12-23-2026 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statutes administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472 (g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, convey, mortgage, assign, and forever warrant unto the Government the following property situated in the State of

Pennsylvania, County(ies) of _____ Cumberland _____ :

BOOK 1187 PAGE 786

EXHIBIT C

FmHA 1927-1 PA (Rev. 8-92)

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

This is a purchase money mortgage under the lien priority laws of the Commonwealth of Pennsylvania, as amended.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

BOOK 1187 PAGE 787

(12) Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, or (d) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, handicap, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, handicap, familial status or age.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms required by statute or determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(23) THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE, OR INSURE THE TITLE TO THE THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN; AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL, AND IN THAT CONNECTION DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING, OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT.

ALL THAT CERTAIN tract of land situate in Penn Township, Cumberland County, Pennsylvania, bounded and described in accordance with a Final Subdivision Plan for Reuben Reiff by Stephen G. Fisher, Professional Land Surveyor, dated May 15, 1987, and recorded in Cumberland County Plan Book 53, Page 60, as follows:

BEGINNING at a point in the center of Blue Pond Road (T-348), at the northwest corner of Lot No. 5 on the hereinbefore mentioned Plan of Lots; thence by the centerline of the said Blue Pond Road (T-348), North 00 degrees 07 minutes 44 seconds West 157.42 feet to a point, being the southwest corner of Lot No. 3 on said Plan; thence by the said Lot No. 3, North 89 degrees 52 minutes 16 seconds East 269.70 feet to a point on Lot No. 1 on said Plan; thence by said Lot No. 1 on said Plan, South 00 degrees 07 minutes 44 seconds East 157.42 feet to a point, being the northeast corner of Lot No. 5 on said Plan; thence by the said Lot No. 5, South 89 degrees 52 minutes 16 seconds West 269.70 feet to a point in the center of the said Blue Pond Road (T-348), the place of BEGINNING.

CONTAINING 42,455.9795 square feet, gross area.

BEING Lot No. 4 on said Plan.

BEING the same premises which Michael D. Hurley and Patti J. Hurley, by their deed dated December 23, 1988 and recorded in the Office of the Recorder of Deeds in and for Cumberland County in Deed Book _____, Volume _____, Page _____, granted and conveyed unto Victoria J. Weiss, the Mortgagor herein.

'93 DEC 2~ AM 10 20

Pennsylvania } SS
Cumberland }
in the office for the recording of Deeds
for Cumberland County, Pa.
Book _____ Vol. _____ Page _____
my hand and seal of office of
PA this _____ day of _____ 19__
Recorder



(24) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(25) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other is address is designated in a notice so given, in the case of the Government to Farmers Home Administration, One Credit Union Place, Suite 330, Harrisburg, Pennsylvania 17110-2996, and in the case of Borrower to the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(26) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this _____ 23rd _____ day of _____ December _____ , 19 __93__.

Signed, sealed, and delivered in the presence of:

_____          _Victoria J. Weiss_____ (SEAL)
                                            VICTORIA J. WEISS

_____          _____ (SEAL)

## ACKNOWLEDGMENT

STATE OF PENNSYLVANIA
                                    }  ss:
COUNTY OF __CUMBERLAND__

On this ____ 23rd ____ day of ____ December ____ , 19 _93_, before me, the undersigned, a Notary Public in and for said State and County, personally appeared ____ VICTORIA J. WEISS ____ ,

known (or satisfactorily proved) to me to be the person(s) whose name(s) ____ is ____ subscribed to the within

instrument, and acknowledged to me that ____ she ____ executed the same for the purposes therein contained.
    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My commission expires _____          _Barbara E. Steel_____
                                                              Notary Public
(NOTORIAL SEAL)

> Notarial Seal
> Barbara E. Steel, Notary Public
> Carlisle Boro, Cumberland County
> My Commission Expires June 3, 1996

### RESIDENCE CERTIFICATE

I certify that the precise residence of the within-named Mortgagee is Washington, D.C.

"U.S. Government Printing Office: 1992 — 657-415

_____          For Mortgagee
        RON TURO, ESQUIRE



NOTICE OF ACCELERATION TO SINGLE FAMILY HOUSING BORROWERS

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

05/13/98

VICTORIA J WEISS

69 BLUE POND RD

NEWVILLE              PA 17241-9531


SUBJECT:   NOTICE OF ACCELERATION OF YOUR RURAL HOUSING SERVICE LOANS AND NOTICE
           OF YOUR OPPORTUNITY TO HAVE A HEARING CONCERNING THIS ACTION


DEAR  VICTORIA J WEISS


PLEASE TAKE NOTE that the Rural Housing Service (RHS) intends to enforce its
real estate mortgages or deeds of trust given or assumed by you as security for
the following-described promissory notes or assumption agreements and declares
the indebtedness immediately due and payable.

| Account Number | Date of Instruments | Amount |
|---|---|---|
| 5990169 | 12/23/93 | 90000.00 |




The instruments securing these loans are described as follows:

| Date of Instrument | Place of Recordation | Recorded In Book No. | Page |
|---|---|---|---|
| 12/23/93 | COUNTY OF CUMBERLAND | 1187 | 786 |




The decision to foreclose is made in accordance with the authority granted in
the above-described real estate instruments for the following reasons:

· MONETARY DEFAULT




The balance of the account is $      97429.03 unpaid principal and
$       3660.93 unpaid interest, as of 05/13/98, plus additional interest accruing
at the rate of $       17.3504 per day thereafter, plus any advances made by the
United States for the protection of its security, the interest accruing on any
such advances, fees, or late charges, and the amount of subsidy to be recaptured
in accordance with the Subsidy Repayment Agreement on the loans which are subject
to recapture.

Unless full payment of this account is received within 30 days from the date of this letter the United States will take action to foreclose under the authority granted in the above-described instruments and to pursue any other available remedies.  Payment should be made by cashier's check, certified check, or postal money orders payable to the Rural Housing Service and sent to the Centralized Servicing Center, P.O. Box 66531, St. Louis, MO 63166.

If you submit to the United States any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the RHS and yourself, the payment WILL NOT CANCEL the effect of this notice.  If insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the United States may have will result and the RHS may proceed as though no such payments had been made.

The above-described instrument provides that the United States may foreclose without Court action by selling the real estate at public sale.  The Government intends to sell the property in this manner.  No further notice is required to be given you concerning this foreclosure. (This paragraph may not apply in states with judicial foreclosure to the extent it conflicts with state law.)

However, you have the opportunity to discuss this decision to accelerate your loans with a RHS official or have an administrative appeal hearing before the foreclosure takes place.  This is an opportunity to discuss why you believe the United States is in error in accelerating your loans and proceeding with foreclosure.  If you desire to have an informal discussion with an RHS official or have any questions concerning the decision or facts used in making our decision, you should contact this office in writing to request a conference. The request for an informal discussion must be sent to the undersigned no later than 05/28/98.  Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received.  You also have the right to an administrative appeal hearing with a hearing officer in lieu of, or in addition to, a conference with this office.  If you request an informal discussion with an RHS official, and the meeting does not result in a descision in which you concur, you will be given a separate time frame in which to submit your requests for an administrative appeal.  (See the attachment for your appeal rights.)

If you do not wish to have an informal discussion with an RHS official as outlined above, you may request an administrative appeal with a member of the National Appeals Division.  The request for an administrative appeal must be sent to the National Appeals Division no later than 06/12/98.  (Please refer to the appeals address for your specific state on the attachment.)  Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received as requesting an administrative appeals.  Please include a copy of this letter with your request.

If you fail to comply with the requirements outlined, the United States plans to proceed with foreclosure.

Federal law does not allow discrimination of any kind.  You cannot be discriminated against in a credit transaction because of your race, color, religion, national origin, sex, marital status, handicap, or age (if you can legally sign a contract).  You cannot be denied a loan because all or a part of your income is from a public assistance program.  If you believe you have been discriminated against for any of these reasons, you should write to the Secretary of Agriculture, Washington, D.C. 20250.

You cannot be discriminated against in a credit transaction because you exercised your rights under the Consumer Credit Protection Act.  You must have exercised these rights in good faith.  The Federal Agency responsible for seeing this law is obeyed is the Federal Trade Commission, Washington, D.C. 20580.

For questions regarding your account, please call Risk Management toll
free at 1-800-793-8861 or TDD 1-800-438-1832, 7:00 a.m. to 5:00 p.m.,
Monday through Friday, Central Time.  With a touch-tone telephone, the Voice
Response Unit (VRU) can provide automated confidential account information,
seven days per week, outside of normal business hours.  Please refer to your
Account Number when you write or call us.  Thank you.

UNITED STATES OF AMERICA
BY MARYANNE COTTMEYER

Section Head, Incoming Calls and Counseling

Rural Housing Service
United States Department of Agriculture